UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | |
| | § | CRIMINAL NO. H-05-0270-7 |
| SYLVIA BRAGGS, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM AND ORDER</u>

Pending before the Court is Defendant's motion to dismiss this case with prejudice on the ground that the government has violated her Sixth Amendment right to a speedy trial.   After reviewing the parties' filings and oral arguments, the evidence presented at the motion hearing held on June 27, 2006, and the applicable law, the Court finds that the motion, Docket No. 182, should be and hereby is **GRANTED** and that this case should be and hereby is **DISMISSED WITH PREJUDICE**.

I.      BACKGROUND

In early 2005, the Houston Police Department ("HPD") engaged in an undercover operation targeting Volly Bastine, a disbarred Houston attorney suspected of trafficking in crack cocaine.  On January 24, 2005, undercover HPD officers allegedly purchased crack cocaine from Bastine.  According to the government, Defendant Sylvia Braggs was involved in that transaction; the United States has proffered testimony that Braggs arrived at the scene with Defendant Bessie Skinner in response to a telephone call from Bastine. HPD Officer King will, according to the government, testify that Braggs approached her (King) and apologized for Braggs and Skinner's late arrival, explaining that they had had trouble making contact with their "regular source."  Braggs denies having participated in

the sale, claiming that she had come along to meet Bastine, her lover, whom she frequently met in motel rooms and at other locations so that they could smoke crack, which Bastine procured.  Braggs has testified that she was never present for the actual drug purchases and was unaware, during her relationship with Bastine, that he was selling crack as well as using it.

In February 2005, Braggs severed ties with Bastine and checked into an inpatient drug treatment facility in Marshall, Texas.  She later moved into her daughter's home in Tatum, Texas, where she received outpatient treatment at various clinics.  Braggs contends that at least some of this treatment was state-funded and that she furnished each facility with her real name, Social Security number, and address.  Braggs secured employment during the latter half of 2005 with a home health care service in Tatum.

The indictment in this case, which named Bastine, Braggs, Skinner, and various other Defendants, was handed down on June 23, 2005.  According to the government, Deputy United States Marshal George Hephner was then assigned to locate and arrest Braggs.  Hephner has testified that, within days of receiving the assignment, he entered Braggs's name into various databases containing information about individuals' residences, employment, driver's licenses and other identification, criminal history, and the like.  Those databases yielded no information indicating Braggs's whereabouts.

Hephner also stated that, in August 2005, he visited the home of Braggs's mother, who informed him that Braggs was not living in Houston, had no stable residence, was using crack cocaine, and maintained only sporadic telephone contact with her family. Hephner claims that he continued, in the ensuing months, to check the databases for new

information concerning Braggs, and records indicate that he did perform at least two searches, neither of which revealed any relevant information.

Braggs has produced evidence that a commercial database available to the general public contains information regarding her previous employers, including one with whom she regularly communicated throughout 2005; the addresses of her mother and daughter, with whom she lived at various times during 2005; and other addresses at which she resided during the relevant period. The evidence also demonstrated that Braggs, using her own name and identifying information, received state-funded inpatient treatment for drug addiction in Texas in late 2005.

On October 3, 2005, Volly Bastine, the primary target of the HPD investigation, died. Three days later, Deputy U.S. Marshal Jeffrey Smith arrested one of Braggs's co-Defendants, Michael Skinner.[1]  Smith subsequently identified a photograph of Braggs and indicated to Hephner that Braggs was present at the site of Michael Skinner's arrest but was released after a records search revealed no outstanding warrants for her arrest. According to Smith, had Braggs given her real name to Smith or one of his fellow agents, they would have discovered her outstanding arrest warrant and taken her into custody. Braggs denies having been present at the scene of Michael Skinner's arrest.

In January 2006, Braggs was admitted to Good Shepherd Hospital in Longview, Texas, where she received treatment for pneumonia. She was arrested upon her discharge from the hospital on January 10, 2006. She now moves to dismiss the indictment, arguing that the six-month delay between her indictment and her arrest violated her Sixth Amendment right to a speedy trial. Braggs argues that, had she become aware of the indictment while Bastine was still alive, she could have secured his

---

[1] Michael and Bessie Skinner are husband and wife.

testimony that she was a drug user and addict but not a drug dealer and that she was not involved in the January 24, 2005 transaction (or any other drug transaction).  The marshals' failure to locate her until after Bastine's death deprived her, she contends, of the opportunity to obtain exculpatory evidence critical to her defense.  The United States claims that the marshals were duly diligent in attempting to execute Braggs's arrest warrant and that there is no evidence – aside from Braggs's own testimony – to support her statement that she and Bastine had a personal relationship or that he would have testified in her defense, had he lived.

## II.    ANALYSIS

The Sixth Amendment guarantees every criminal defendant the right to a speedy and public trial.  U.S. CONST. amend. IV.  The Supreme Court has held that a district court evaluating a claimed speedy trial violation must balance the interests of the defendant and the public in bringing cases to trial quickly against the government's interest in bringing criminals to justice.  *Barker v. Wingo*, 407 U.S. 514, 519-20 (1972).  *Barker* established a four-factor test, under which the Court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) any prejudice to the defendant resulting from the delay.  *Id.* at 530.

According to the *Barker* Court:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

*Id.* at 530-31.  The delay in this case lasted six and a half months.

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. . . . A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 531 (internal citation omitted). Here, the evidence indicates that the delay did not result from laxity or carelessness on the part of the federal marshals. The government has not, however, asserted an affirmative justification such as a continuing investigation or a missing witness.

As to the third factor, "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531-32. Here, of course, Braggs has timely asserted the right.

> The fourth factor, prejudice,

> should be assessed in light of the interests of defendants which the speedy trial right was designed to protect. [The Supreme Court] has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. . . . Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious.

*Id.* at 532.

In sum, all of the factors weigh in Braggs's favor. While the first three might not, in themselves, convince the Court that dismissal is warranted, the fourth is dispositive. A witness has died, and while the government is correct in stating that we cannot know what that witness would have said if called to testify, that uncertainty is precisely the

point.  Braggs's complaint is that she cannot now introduce the testimony that Bastine would have given – whatever its substantive content.  Bastine is dead, and his testimony is lost forever; "the prejudice is obvious."  *Id.*

To be sure, this Court, like any court, is reluctant to dismiss an indictment over the government's objection and with prejudice.  That sense of reluctance is especially great where, as here, the government has engaged in no wrongdoing.  In this instance, however, several countervailing considerations must be noted.[2]  First, from the evidence that has been adduced, the Court is, at the very least, skeptical as to whether Braggs is guilty of the crime charged in the indictment.  Indeed, the paucity of evidence against her is exactly why Bastine's unavailability is so critical; Braggs feels strongly that Bastine would have contradicted the government's witnesses and would have exonerated her.

Second, and relatedly, even if Braggs could be proven guilty, no one suggests that she played anything other than a very minor role in the criminal misconduct that is the subject of the indictment.  Third, Braggs has forthrightly admitted her prior addiction to crack cocaine and has offered uncontroverted evidence that she has voluntarily and successfully sought treatment.  Accordingly, from the facts available to the Court, it would appear that important goals of the criminal justice system have already been attained.  For all of these reasons, the Court finds that the indictment against Braggs should be, and hereby is, **DISMISSED WITH PREJUDICE**.

---

[2] Although the Court would have reached the same result in the absence of one or all of the following considerations, they do attenuate the misgivings that normally accompany the dismissal with prejudice of an indictment prior to adjudication.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 5th day of July, 2006.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**